UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
:
ORLANDO PRICE, *et al.* :
: CASE NO. 1:08-CV-1860
Plaintiffs, :
:
vs. : OPINION & ORDER
: [Resolving Doc. Nos. 17, 20, 21 & 36.]
EQUIFIRST CORPORATION, *et al.* :
:
Defendants. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Defendant EquiFirst Corporation ("EquiFirst") moves this Court to dismiss the action brought by Plaintiffs Orlando and Darlene Price (collectively, the "Plaintiffs") under Federal Rule of Civil Procedure 12(b)(6), saying that the Plaintiffs' current claims are barred by *res judicata* and by the relevant statutes of limitations. [Doc. 17.] Defendants HSBC Mortgage Corporation (USA) and HSBC Mortgage Services, Inc. (collectively, "HSBC") move this Court to grant judgment on the pleadings in their favor under Federal Rule of Civil Procedure 12(c),[1/] stating that the Plaintiffs' claims are barred by *res judicata*, the applicable statutes of limitations, and judicial estoppel. [Doc. 20.] HSBC also contends that the Plaintiffs' Complaint fails to state a claim upon which relief may be granted. [*Id.*] In response, the Plaintiffs argue that there is no basis in law or fact to warrant the dismissal of their claims. [Doc. 36.] For the reasons stated below, the Court **GRANTS** Defendant

---

[1/] HSBC has also filed a motion for costs under Federal Rule of Civil Procedure 41(d). [Doc. 21.]

-1-

Case No. 1:08-CV-1860
Gwin, J.

EquiFirst's motion to dismiss and Defendant HSBC's motion for judgment on the pleadings. The Court **DENIES** HSBC's motion for costs.

### I. Background

This litigation arises out of a loan transaction formally entered into by the Plaintiffs and Defendant EquiFirst on or about April 14, 1998. [Doc. 2 at 3.] With this transaction, the Plaintiffs executed a promissory note (the "Note") in favor of EquiFirst for the amount of $108,000.00. [Doc. 37, Ex. D at 23.] The Note was secured by a mortgage (the "Mortgage") covering real property and improvements located at 947 Brunswick Road, Cleveland Heights, Ohio 44112 (the Plaintiffs' residence or the "Property"). [*Id.*]

About a month prior to April 14, 1998, the Plaintiffs met with loan officer Aaron Jackson, Jr. to apply for either a line of credit or an equity line of credit through EquiFirst in order to make repairs to the Plaintiffs' home. [Doc. 2 at 2.] The Plaintiffs apparently explained to loan officer Jackson that the estimated cost of the repairs would be $16,000 and that they wanted the flexibility of making either "interest only" payments or "principal and interest" payments. [*Id.* at 2-3.] The Plaintiffs indicate that they provided all the documentation required to process the loan and signed all the documentation necessary to obtain the loan from Defendant EquiFirst. [*Id.* at 3.] While doing so, the Plaintiffs noticed that the "Good Faith Estimate" document omitted a loan origination fee and the broker fee and that the closing fees were estimated at $1,000.00. [*Id.* at 3.] Further, the Plaintiffs allege that they were not provided with any copies of the loan documents until after closing. [*Id.*]

On April 14, 1998, the Plaintiffs closed on their loan. [*Id.*] They claim that they were not given time to review the documents and that the Hud-1 Settlement Statement prepared by Defendant

Case No. 1:08-CV-1860
Gwin, J.

EquiFirst charged them $3,000.00 in fees. [*Id.*] Moreover, even though they believed that they were obtaining an "open end credit plan," the Plaintiffs were apparently placed into a "closed end credit plan." [*Id.*]

After closing on the loan, the Plaintiffs allegedly discovered that there was no provision in their mortgage for the "line of credit" or "equity line" and that they were required to pay "principal" and "interest" payments on a non-disclosed adjustable rate note. [*Id.*]

Approximately one week after closing on the loan, Defendant EquiFirst sent the Plaintiffs two different "Good Faith Estimates," one from the loan officer and one from EquiFirst, both of which omitted the loan origination fee and the broker fee. [*Id.* at 5.] Apparently, after the Plaintiffs had signed the documents, a mortgage broker fee in the amount of $3,756.00 was added in pen. [*Id.*] Also, a title insurance fee in the amount of $357.00 was added in pen. [*Id.*] The "Good Faith Estimates" also allegedly did not have completed "Estimated Note Rate" (interest rate), "Loan Program," "Loan Term in Months," or "Loan to Value" sections. [*Id.*]

The Plaintiffs also allege that Defendant EquiFirst did not provide them with a preliminary Truth-in-Lending Disclosure stating the annual percentage rate, the finance charge, the finance amount, and the total amount of payments within three days of the submission of the loan application or at any time during the loan process. [*Id.* at 7.] Further, the Plaintiffs claim that the Truth-in-Lending Disclosure, signed and dated April 14, 1998, understated the Plaintiffs' payments by $120,555.16 and the annual percentage rate by 2.74%. [*Id.* at 7-8.]

According to the Plaintiffs, Defendant EquiFirst sent the Plaintiffs a Hud-1 Settlement Statement dated April 14,1998 approximately one week after the loan closing that reflected a broker fee increase of $153.02 from the "Good Faith Estimate" dated April 3, 1998 without prior disclosure.

-3-

Case No. 1:08-CV-1860
Gwin, J.

[*Id.* at 9.] This Hud-1 Settlement Statement also required the Plaintiffs to pay an additional "other broker fee" of $250.00 and a document preparation fee of $220.00, neither of which were apparently disclosed in the April 3, 1998 "Good Faith Estimate." [*Id.* at 10.]

The Plaintiffs also allege that they did not receive two copies of the document describing their right to cancel the loan after the loan closing. [*Id.*] They also claim that they were never informed that the loan had a prepayment penalty until the closing and that they were never given the opportunity to prepay the loan. [*Id.*]

On January 22, 2002, the Plaintiffs filed for Chapter 13 bankruptcy. [Doc. 38, Ex. J.] They were discharged on June 6, 2006. [*Id.* at 63.] Defendant EquiFirst assigned the Note and Mortgage to Household Realty Corporation ("Household") in or around June 2003. [Doc. 37, Ex. D at 23.] On or about August 7, 2006, Household initiated an action against the Plaintiffs in the Cuyahoga County Court of Common Pleas apparently for non-payment on the Note. [*Id.*] Default judgment was entered against the Plaintiffs on or about January 16, 2007. [*Id.*] Household bought the Property at a sheriff's sale on April 30, 2007. [*Id.*]

On April 27, 2007, the Plaintiffs filed a Complaint against the Defendants in this Court (Case No. 07-CV-1257). [Doc. 1.] The parties attended a case management conference on August 2, 2007. At the conference, the parties agreed that the Plaintiffs would purchase their residence for $30,000 within 30 days, receiving a quitclaim deed from Household in exchange. [Doc. 37, Ex. B at 17.]

In response to the Court's questioning during the memorialization of the settlement, the Plaintiffs stated that they agreed that if the Plaintiffs were unable to come up with financing within 30 days, they could re-file their claims. [*Id.*] The Defendants appeared to acquiesce on this point, but

-4-

Case No. 1:08-CV-1860
Gwin, J.

later said that if the Plaintiffs did not obtain refinancing within approximately 30 days, then the case would be dismissed with prejudice pursuant to a separate docket entry; the Plaintiffs agreed with this statement. [*Id.* at 18.]

The same day, August 2, 2007, the Court issued an order stating that the case was to be marked settled and *dismissed with prejudice*. [Doc. 37, Ex. C.] The Court subsequently issued an opinion and order correcting the disposition of the case to reflect the fact that the case, at least initially, was to be dismissed *without prejudice*. [Doc. 41.]

On October 26, 2007, the Plaintiffs executed a settlement agreement and release containing the following terms:

> 1. The [Plaintiffs] and Household will execute a Purchase Agreement on or before August 31, 2007 for the [Plaintiffs] to repurchase the Property from Household . . . .
>
> 2. The [Plaintiffs] shall have thirty (30) days from the Effective Date to obtain financing for the purchase from any lender other than Household and/or any of its affiliates . . . . *If the [Plaintiffs] do not obtain financing within thirty (30) days, the [Plaintiffs] may either (a) obtain a thirty (30) day extension of time to find financing, or (b) terminate the Purchase Agreement and void this Agreement and pursue the claims filed in the Litigation*.
>
> . . . .
>
> 4. If *the [Plaintiffs] obtain financing and the transaction closes, the [Plaintiffs] shall dismiss with prejudice all claims against HSBC Mortgage Corporation (USA) and HSBC Mortgage Services, Inc.* within ten (10) days of closing the real estate transaction described herein.
>
> . . . . .

[Doc. 37, Ex. D at 24-25] (emphasis added).

The Plaintiffs were apparently unable to obtain the financing necessary to repurchase their home within the 30 day period. On August 4, 2008, the Plaintiffs filed a Complaint against the

Case No. 1:08-CV-1860
Gwin, J.

Defendants in this Court (Case No. 08-CV-1860) that set forth the same claims as the Complaint filed in the previous case. [Doc. 2.] EquiFirst now moves the Court to dismiss the action brought by the Plaintiffs under Federal Rule of Civil Procedure 12(b)(6), saying that the Plaintiffs' current claims are barred by *res judicata* and by the relevant statutes of limitations. [Doc. 17.] Additionally, HSBC asks the Court to grant judgment on the pleadings in its favor under Federal Rule of Civil Procedure 12(c), stating that the Plaintiffs' claims are barred by *res judicata*, the applicable statutes of limitations, and judicial estoppel. [Doc. 20.] HSBC also contends that the Plaintiffs' Complaint fails to state a claim upon which relief may be granted. [*Id.*] In response, the Plaintiffs argue that there is no basis in law or fact to warrant the dismissal of their claims. [Doc. 36.]

## II. Legal Standard

*A. Motion to Dismiss*

In deciding a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in a light most favorable to the plaintiffs, accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop v. Lucent Techs., Inc*, 520 F.3d 516, 519 (6th Cir 2008) (citations omitted). Under this standard, the "complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Id.* (citations and internal quotations omitted). Further, "conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id.* (citations omitted).

Pursuant to Rule 12(b)(6), "a complaint containing a statement of facts that merely creates a *suspicion* of a legally cognizable right of action is insufficient." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007). The "[f]actual allegations must be enough to raise a right

-6-

Case No. 1:08-CV-1860
Gwin, J.

to relief above the speculative level," *id.*, setting forth "a claim to relief that is plausible on its face." *Id.* at 1965, 1974; *see also Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

In resolving a motion to dismiss, a district court must confine its review to the matters in the pleadings. FED. R. CIV. P. 12(d). If a court reviews matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56." *Id.*

*B. Motion for Judgment on the Pleadings*

The Court evaluates a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure in the same manner as a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *See Jackson v. Heh*, No. 98-4420, 2000 WL 761807, at *3 (6th Cir. June 2, 2000) ("The standard for review of entry of judgment on the pleadings under Rule 12(c) is indistinguishable from the standard of review for dismissals for failure to state a claim under Rule 12(b)(6) . . . .").

*C. Motion for Costs*

Under Federal Rule of Civil Procedure 41(d), "[i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, [a district] court: . . . may order the plaintiff to pay all or part of the costs of that previous action . . . ." The court has discretion to award costs under Rule 41(d). *Crespo v. WFS Fin. Inc.*, 580 F. Supp. 2d 614, 624 (N.D. Ohio 2008). According to the Sixth Circuit, "Rule 41(d) is meant not only to prevent vexatious litigation, but also to prevent forum shopping, 'especially by plaintiffs who have suffered setbacks in one court and dismiss to try their luck somewhere else.' " *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 874 (6th Cir. 2000) (citations omitted). *Id.*

-7-

Case No. 1:08-CV-1860
Gwin, J.

### III. Discussion

Defendant EquiFirst moves this Court to dismiss the action brought by the Plaintiffs under Rule 12(b)(6), arguing that the Plaintiffs' claims are barred by *res judicata* and by the relevant statutes of limitations. [Doc. 17.] Defendant HSBC, in a separate motion for judgment on the pleadings, contends that the Plaintiffs' claims are barred by *res judicata*, the applicable statutes of limitations, and the doctrine of judicial estoppel. [Doc. 20.] HSBC also contends that the Plaintiffs' Complaint fails to state a claim upon which relief may be granted. [*Id.*] The Court examines each of these arguments below.

*A. Defendant EquiFirst's Motion to Dismiss*

Defendant EquiFirst argues that the Plaintiffs' case should be dismissed because their claims are barred by *res judicata* and the applicable statutes of limitations. [Doc. 17.] EquiFirst bases its *res judicata* argument on the fact that the Court dismissed the Plaintiffs' previous case with prejudice and the Plaintiffs have now refiled the case, making claims identical to those made in the initial litigation. The Court has recognized, however, that a clerical error was made when it dismissed the Plaintiffs' first case *with prejudice*; this error has now been corrected and the record now reflects the fact that the case should have been dismissed *without prejudice*. [Doc. 41.] Nevertheless, the Court **GRANTS** Defendant EquiFirst's motion to dismiss because all of the Plaintiffs' claims either do not exist (because there is no private right of action for the particular statutory claim) or are time-barred under the applicable statutes of limitations.

In their Complaint, the Plaintiffs assert the following causes of action: (1) violations of the Real Estate Settlement Procedure Act ("RESPA"), 12 U.S.C. § 2401, *et seq*. and Regulation Z, 24

Case No. 1:08-CV-1860
Gwin, J.

C.F.R. § 3500, *et seq.* ; (2) violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq*. and Regulation Z, 26 C.F.R. § 226.1, *et seq.*; (3) violations of 16 C.F.R. § 238, which prohibits bait and switch advertising and is part of the guidelines implementing the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 41, *et seq.*; (4) violations of the Ohio Mortgage Broker Registration Act ("OMBRA"), O.R.C. § 1322, *et seq.*; (5) violations of the Ohio Consumer Sales Practices Act ("OCSPA"), O.R.C. § 1345, *et seq.*; (6) state tort claims including fraud, breach of fiduciary duty, intentional infliction of emotional distress, and negligent misrepresentation;(7) unconscionability; (8) improvident lending; and (9) civil conspiracy. [Doc. 2.] The Court will examine each of these claims in light of Defendant EquiFirst's motion to dismiss.

1. RESPA Violations

The Plaintiffs' allegations of RESPA violations center on Defendant EquiFirst's non-compliance with 12 U.S.C. § 2604 and 24 C.F.R. §§ 3500.06-07, which require lenders to provide borrowers with an information booklet and a good faith estimate of certain anticipated charges. Courts in the Sixth Circuit have held that this RESPA provision and the accompanying regulations do not create a private right of action. *See Morrison v. Brookstone Mortgage Co.*, 415 F. Supp. 2d 801, 806 (S.D. Ohio 2005) ("In the Court's view, the fact that Congress did not include a remedy provision for disclosure requirements made under § 2603 or § 2604 strongly suggests that no such remedy should be implied."); *see also Collins v. FMHA-USDA*, 105 F.3d 1366, 1367-68 (11th Cir.1997) (concluding that "there is no private civil action for a violation of 12 U.S.C. § 2604(c), or any regulations relating to it"). Thus, the Court grants Defendant EquiFirst's motion to dismiss with respect to this claim.

2. TILA Violations

-9-

Case No. 1:08-CV-1860
Gwin, J.

In their Complaint, the Plaintiffs contend that Defendant EquiFirst violated several provisions of TILA, as well as a number of provisions of accompanying Regulation Z. TILA expressly states that "[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e); *see also Weston v. AmeriBank*, 265 F.3d 366, 368 (6th Cir. 2001). The date of the occurrence of the violation in this case is the closing date of the loan. *See Smith v. Encore Credit Corp.*, No 4:08-CV-1462, 2008 WL 5169683, at *8 (N.D. Ohio Dec. 9, 2008).

Equitable tolling may apply to the one-year statute of limitations. *Borg v. Chase Manhattan Bank USA, NA*, 247 Fed. Appx. 627, 633 (6th Cir. 2007). When equitable tolling is applied, the one-year period begins to run when the borrower discovers or has had the reasonable opportunity to discover the fraudulent concealment of charges. *Id.* (citing *Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037, 1041 (6th Cir. 1984)).

In this case, the alleged TILA violations occurred on April 14, 1998, the closing date of the loan in question. Equitable tolling does not apply in this case, as the Plaintiffs repeatedly note in the Complaint that they discovered the alleged TILA violations within a week or two weeks of the loan closing date (if not before). [Doc. 2 at 3-7, 9-10.] Thus, the Plaintiffs should have brought their TILA claims no later than April 28, 1999. Since the Plaintiffs did not file their first Complaint until eight years after this date, their TILA claims are clearly barred by the applicable statute of limitations. The Court therefore grants Defendant EquiFirst's motion to dismiss with respect to this claim.

3. 16 C.F.R. § 238 Violations

Throughout the Complaint, the Plaintiffs repeatedly allege violations of 16 C.F.R. § 238, which prohibits bait and switch advertising and is part of the guidelines implementing the FTCA, 15

Case No. 1:08-CV-1860
Gwin, J.

U.S.C. § 41, *et seq*. The FTCA provides no private right of action. *Sharwell v. Selva*, 4 Fed. Appx. 226, 227 (6th Cir. Feb. 5, 2001) (citing *Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 988 (D.C. Cir. 1973)). As a result, the Plaintiffs have no standing to bring any claims under 16 C.F.R. § 238 or the FTCA and the Court therefore grants Defendant EquiFirst's motion to dismiss as it relates to these claims.

4. OMBRA Violations

The Plaintiffs argue that Defendant EquiFirst violated the OMBRA, O.R.C. § 1322, *et seq*. This statute is designed to "protect mortgage borrowers from wrongful conduct by mortgage brokers." *Equicredit Corp. v. Jackson*, No. 03-MA-191, 2004 WL 2726115, ¶ 65 (Ohio Ct. App. Nov. 24, 2004) (citations omitted). Claims under the OMBRA are governed by a six-year statute of limitations. *See* O.R.C. § 2305.07; *see also Bird v. Carteret Mortgage Corp.*, 2:06-CV-0588, 2007 WL 43551, at *3 (S.D. Ohio Jan. 5, 2007).

In this case, the Plaintiffs do not allege that EquiFirst is a mortgage broker, as required to prove liability under the OMBRA. Even if they could make out a claim under the OMBRA, however, it would be time-barred. The Plaintiffs should have presented this claim to the Court no later than April 2004; as they did not do so, this claim must be dismissed.

5. OCSPA Violations

In their Complaint, the Plaintiffs allege that Defendant EquiFirst violated the Ohio Consumer Sales Protection Act ("OCSPA"). An action under the OCSPA "may not be brought more than two years after the occurrence of the violation which is the subject of the suit." O.R.C. § 1345.10. The discovery rule does not apply to OCSPA claims. *See Thornton v. State Farm Mut. Auto Ins. Co.*, No. 1:06-CV-00018, 2006 WL 3359448, at *3 (N.D. Ohio Nov. 17, 2006); *see also Rosenow v.*

Case No. 1:08-CV-1860
Gwin, J.

*Shutrump & Assocs.*, 839 N.E.2d 82, 86-87 (Ohio Ct. App. 2005). As the alleged OCSPA violation occurred more than nine years before the Plaintiffs filed their current Complaint and more than ten years before the Plaintiffs filed their previous Complaint, the Court dismisses this claim because it is barred by the applicable statute of limitations.

6. Fraud, Breach of Fiduciary Duty, Intentional Infliction of Emotional Distress, and Negligent Misrepresentation

The Plaintiffs allege the following state tort claims against Defendant EquiFirst: fraud, breach of fiduciary duty, intentional infliction of emotional distress, and negligent misrepresentation. Under O.R.C. § 2305.09 (C), a four-year statute of limitations applies to fraud claims. Ohio courts have also held that a four year statute of limitations applies to claims of breach of fiduciary duty, *Hoeppner v. Jess Howard Elec. Co.*, 780 N.E.2d 290, 297 (Ohio Ct. App. 2002), intentional infliction of emotional distress, *Yeager v. Local Union 20*, 453 N.E.2d 666, 672 (Ohio 1983), and negligent misrepresentation. *Dancar Props., Ltd. v. O'Leary-Kientz, Inc.*, No. C-030936, 2004 WL 2974067, ¶ 14 (Ohio Ct. App. Dec. 23, 2004). O.R.C. § 2305.09(D) does not provide for a discovery rule on any of these claims, and the Ohio Supreme Court has held that no such discovery rule applies. *Investors REIT One v. Jacobs*, 546 N.E.2d 206, 211 (1989).

Regardless of whether the discovery rule applies to these claims, however, the Plaintiffs themselves contend that they discovered the grounds for their state-law claims in April 1998. Because the Plaintiffs did not bring these claims before the Court on or before April 2002, they are time-barred and the Court therefore grants Defendant EquiFirst's motion to dismiss with respect to the Plaintiffs' claims of fraud, breach of fiduciary duty, intentional infliction of emotional distress, and negligent misrepresentation.

Case No. 1:08-CV-1860
Gwin, J.

<u>7.Unconscionability</u>

The Plaintiffs set forth a claim of unconscionability in their Complaint. Unconscionability is not recognized as a separate and distinct cause of action under Ohio law. *See Adersons, Inc. v. Consol, Inc.*, 185 F. Supp. 2d 833, 842 (N.D. Ohio 2001). It can only be raised as an affirmative defense to a breach of contract action or incorporated into an unjust enrichment claim. *See id.* at 841-842.

Even if they had a valid claim of unconscionability, the Plaintiffs have failed to allege any facts in support of this claim. "'Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Lake Ridge Acad. v. Carney*, 613 N.E.2d 183, 189 (Ohio 1993) (citations omitted). The key question is whether "'each party to the contract, considering his obvious education or lack of it, [had] a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print . . . ?'" *Id.* (citations omitted). In their Complaint, the Plaintiffs merely state that the "Defendants['] conduct towards [the] Plaintiffs amounted to an act of unconscionability in and during the course and dealings of the transaction, thus[] entitling [the] Plaintiffs to damages . . . ." [Doc. 2 at 14.] As a result, the Plaintiffs in no way indicate that, in this case, there was an absence of meaningful choice on their part together with contract terms that were unreasonably favorable to Defendant EquiFirst

Further, even if the Plaintiffs had set forth a valid claim of unconscionability and had supported it with the necessary factual allegations, this claim is now time-barred under the four-year statute of limitations provided in O.R.C. § 2305.09(D) that applies to injuries to the rights of the plaintiff not arising on contract nor enumerated in certain sections of the Ohio Revised Code. The

Case No. 1:08-CV-1860
Gwin, J.

Court therefore grants Defendant EquiFirst's motion to dismiss with respect to this claim.

8. Improvident Lending

In their Complaint, the Plaintiffs assert a claim of improvident lending against Defendant EquiFirst. This claim is not recognized under Ohio law. Further, it would still be subject to the four-year statute of limitations set out in O.R.C. § 2305.09(D). Thus, the Court dismisses this claim.

9. Civil Conspiracy

The Plaintiffs assert a claim of civil conspiracy against Defendant EquiFirst in their Complaint. Ohio does not recognize conspiracy as an independent tort. *See Orbit Elecs., Inc. v. Helm Instrument Co.*, 855 N.E.2d 91, 100 (Ohio Ct. App. 2006) ("An action for civil conspiracy cannot be maintained unless an underlying unlawful act is committed."); *Putka v. First Catholic Slovak Union*, 600 N.E.2d 797, 803 (Ohio Ct. App. 1991) (noting that an independent claim of "conspiracy is not a recognized tort under Ohio law") (quotation marks omitted). In this case, all of the relevant causes of actions underlying the conspiracy claim either do not exist or are time barred. As a result, the Plaintiffs' civil conspiracy claim fails and, accordingly, it is dismissed. *See Chesher v. Neyer*, 477 F.3d 784, 796 (6th Cir. 2007) ("Here, where the underlying infliction of emotional distress did not accrue until after April 9, 2003, it would be incongruous to hold that the conspiracy claim premised on those tort[u]ous acts accrued earlier.").

*B. Defendant HSBC's Motion for Judgment on the Pleadings*

Defendant HSBC moves this Court to grant judgment on the pleadings in its favor under Federal Rule of Civil Procedure 12(c), stating that the Plaintiffs' claims are barred by *res judicata*, the applicable statutes of limitations, and judicial estoppel. [Doc. 20.] HSBC also contends that the Plaintiffs' Complaint fails to state a claim upon which relief may be granted. [*Id.*] Finally, HSBC has

-14-

Case No. 1:08-CV-1860
Gwin, J.

also filed a motion for costs under Federal Rule of Civil Procedure 41(d). [Doc. 21.] The Court does not reach HSBC'S *res judicata* and judicial estoppel arguments because it finds persuasive HSBC's contentions regarding the fact that the applicable statutes of limitations bar the Court's consideration of the Plaintiffs' claims.[2/] Thus, for the same reasons underlying its granting of Defendant EquiFirst's motion to dismiss, the Court **GRANTS** Defendant HSBC's motion for judgment on the pleadings. The Court **DENIES** HSBC's motion for costs.

### III. Conclusion

For the reasons stated above, the Court **GRANTS** Defendant EquiFirst's motion to dismiss and Defendant HSBC's motion for judgment on the pleadings. The Court **DENIES** Defendant HSBC's motion for costs.

IT IS SO ORDERED.

Dated: April 1, 2009              s/      *James S. Gwin*
                                  JAMES S. GWIN
                                  UNITED STATES DISTRICT JUDGE

---

[2/] These contentions are identical in all relevant respects to those advanced by Defendant EquiFirst in its motion to dismiss and accepted by the Court in this opinion and order.